11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Rocky Allen Morris

Appellant

Vs.                   No.
11-02-00143-CR B Appeal from Dallas County

State of Texas

Appellee

 

Appellant
filed a motion for postconviction DNA testing of biological material pursuant
to TEX. CODE CRIM. PRO. ANN. art. 64.01 et seq. (Vernon Pamph. Supp.
2003).  The trial court found that
appellant=s identity was not and is not in issue in the
case and denied appellant=s motion without a hearing. 
Appellant appeals.  We affirm.

In 1995,
the jury convicted appellant of aggravated sexual assault, found the
enhancement allegation to be true, and assessed appellant=s punishment at confinement for 60 years and
a fine of $10,000.

Article
64.01 permits a convicted person to submit to the convicting court a motion for
forensic DNA testing of evidence containing biological material.  Appellant sought DNA testing of spermatozoa
found in the victim=s
vagina.  Article 64.03 contains several
requirements that the convicted person must establish in order to be entitled
to DNA testing.  One of the requirements
that the convicting court must find is that Aidentity was or is an issue in the case.@  Article 64.03(a)(1)(B).  The convicting court made the following
findings:

After
considering the pleadings of both parties, the DNA statute, and the Court=s personal experience and knowledge, the
Court denies Morris=s
motion for postconviction DNA testing based on the following findings:

 








1.  In relation to this case, the Southwestern
Institute of Forensic Sciences (SWIFS) has retained five pieces of physical
evidence collected as part of the rape kit performed on the victim:  item 1, a vaginal swab; item 2, a vaginal
smear; item 4, pubic hair combings; item 5, pubic hair cuttings; and item 6,
debris collections (the gloves, scissors, and other packaging from the rape
kit).  None of this evidence was
subjected to DNA testing at the time of trial, but the Parkland physician that
performed the rape examination observed intact spermatozoa on the vaginal
smear.

 

2.  Morris=s identity was not and is not an issue in this case. [The victim]
testified unequivocally that Morris was the person that raped her. [The victim]
had known Morris, her mother=s boyfriend, for four years prior to the rape and had lived in his home
for approximately six weeks.  Further,
Morris admitted to [the victim=s] mother on several occasions that he had Aattacked@ [the victim] but denied there was Aintercourse,@ and
some of these admissions were recorded and introduced into evidence at
trial....In addition, Morris did not contend during closing argument or at any
other phase of trial that he was not the person who sexually assaulted [the
victim].  Moreover, Morris does not assert
in his motion any facts or refer to any record citations that would demonstrate
that his identity as the rapist was an issue. 
For this reason, Morris does not meet his burden under the statute.  See TEX. CODE CRIM. PROC. ANN. art.
64.03(a)(1)(B) (Vernon Supp. 2002).

 

Based on
the above findings, the court DENIES Morris=s request for postconviction DNA testing of the rape kit items in SWIFS=s possession.

 

Pursuant to Article
64.05, appellant appeals the determinations made by the trial court.  See Kutzner v. State, 75 S.W.3d 427, 435
(Tex.Cr.App.2002).

Appellant
did not testify at the 1995 trial.  He
presented no evidence at the trial.  The
taped  telephone conversations between
the victim=s mother and appellant show the following
statements:

[THE VICTIM=S MOTHER]: What you did was B

 

[APPELLANT]: She didn=t have a mark.  She did not get hurt one bit, not even a scratch.

 

[THE VICTIM=S MOTHER]: Yeah, she got hurt.

 

[APPELLANT]: She didn=t get B there wasn=t no
intercourse to it.  I=ve done everything for them for four years
and you know that.

 

[THE VICTIM=S MOTHER]:  It wasn=t because you didn=t try and you know that.  I don=t think   that you have faced up
to the realization about everything you did. 
I really don=t.

 

[APPELLANT]: I don=t think she realizes what all I=ve done for her for four years, either.

 








[THE VICTIM=S MOTHER]: That don=t make it okay.

 

                                                           *    *   
*

 

[THE VICTIM=S MOTHER]: Have you really faced head on with what a bad thing you did?

 

[APPELLANT]: I sure have.  All I=ve been asking for is forgiveness B

 

                                                           *    *   
*

 

[APPELLANT]: Yeah.  Remember that time when they needed a hundred dollars for  something and she couldn=t get no money nowhere and they would have
been thrown out in the streets if I hadn=t helped them.  I realize what I=ve done.

 

[THE VICTIM=S MOTHER]: That didn=t give you the right to do what you did.

 

[APPELLANT]: I know.

 

[THE VICTIM=S MOTHER]: You don=t pay for that.  You don=t B you don=t earn the B

 

[APPELLANT]: I know what I=ve done and I=ve been begging for her forgiveness for  - - I don=t think she realizes what=s fixing to happen to me or she don=t care.  I just want her to
think about what all I=ve
done for her and helped her and everything, have her mercy on me.

 

[THE VICTIM=S MOTHER]: You don=t earn the right to attack somebody. Don=t you understand  that?

 

[APPELLANT]: I didn=t hurt her.

 

[THE VICTIM=S MOTHER]: Yeah, you hurt her.

 

[APPELLANT]: Her feelings.

 

[THE VICTIM=S MOTHER]: Yeah, you hurt her. 
She=s never going to get over it.

 

[APPELLANT]: I think she=s already over it.  She=s with
Blue and they=re probably out partying and everything
else.  She=s over it now.

 

[THE VICTIM=S MOTHER]: No, she ain=t over it.








 

[APPELLANT]: (Unintelligible).

 

[THE VICTIM=S MOTHER]: She ain=t over it.

 

                                                           *    *   
*

 

[APPELLANT]: The State has offered me 45
years.  I=m pleading not guilty.  I don=t have no choice.  I can=t do
no 45 years or no 20 or 25.  You know
that.  I=m 40 years old.

 

[THE VICTIM=S MOTHER]: Well, you didn=t think about that when you did it, did you?

 

[APPELLANT]: No, because the whiskey was
thinking for me.

 

                                                           *    *   
*

 

[THE VICTIM=S MOTHER]: If you hadn=t done it in the first place, none of this would be happening.  Don=t you realize that?

 

[APPELLANT]: I know that.

 

[THE VICTIM=S MOTHER]: No, you don=t.

 

                                                           *    *   
*

 

[THE VICTIM=S MOTHER]: Well, I don=t think you realize the seriousness of what you did.  Because you=re a man you never did see B

 

[APPELLANT]: I realized it.

 

[THE VICTIM=S MOTHER]: You never B

 

[APPELLANT]: How many times have I told you I
realized it?  How many times have I told
you?

 

We have
reviewed the reporter=s
record of the 1995 trial, and we hold that the trial court=s findings copied above are supported by the
record.  Appellant=s admissions in the telephone conversations
with the victim=s mother placed appellant and the victim
together at appellant=s home
at the time of the sexual assault.








The
admissions clearly reveal that appellant was involved in some type of an attack
upon the victim.  Appellant=s only complaint in the appeal of his
aggravated sexual assault conviction in 1995 concerned an alleged voir dire
error.  There was no issue on appeal
regarding the sufficiency of the evidence to prove appellant=s identity as the assailant.  See Morris v. State, No. 05-95-01401-CR
(Tex.App. - Dallas 1998, pet=n ref=d)(not designated for publication).  The medical doctor who examined the victim
following the sexual assault found Ano motile sperm@ in the victim=s
vaginal vault.  In an affidavit,
appellant stated that he had:

[R]eason to believe that should a hearing be
granted and DNA Testing ordered in my case, that the Court and medical expert
will find that the spermatozoa found in the complainant is either [the victim=s] boyfriend or her husband or some
conspirator other than I.

 

The court in Bell v.
State, 90 S.W.3d 301, 308 (Tex.Cr.App.2002), stated:  AChapter 64 requires that identity >was or is= an issue, not that future DNA testing could raise the issue.@  The
issue in the 1995 conviction was not identity. 
The issue was whether penetration occurred.

We hold
that the trial court did not err in denying appellant=s motion for DNA testing.  See Green v. State, No. 04-02-00221-CR, 2002
WL 31694228 (Tex.App. - San Antonio Dec. 4, 2002)(pet=n filed); In re McBride, 82 S.W.3d 395
(Tex.App. - Austin 2002, no pet=n).  Appellant=s first point of error is overruled.

In his
second point, appellant cites Strickland v. Washington, 466 U.S. 668 (1984),
and contends that he was denied the effective assistance of counsel in
violation of the U.S. CONST. amend. VI. 
The court in Bell noted that the Texas Court of Criminal Appeals
has not decided whether a convicted person may raise a claim of ineffective
assistance arising from a hearing under Chapter 64 of the Texas Code of
Criminal Procedure.








We hold
that a convicted person under Chapter 64, like a convicted applicant under TEX.
CODE CRIM. PRO. ANN. art. 11.071 (Vernon Supp. 2003) who files a writ of habeas
corpus, does not have a federal or state constitutional right to effective
assistance of counsel.  See Coleman v.
Thompson, 501 U.S. 722 (1991); Ex parte Graves, 70 S.W.3d 103, 110
(Tex.Cr.App.2002); and Ex parte Mines, 26 S.W.3d 910, 913-16
(Tex.Cr.App.2000).  The court in Ex
parte Graves observed that the providing of counsel by the State in
postconviction proceedings does not Aturn a legislative act of grace into a constitutional right.@  Ex
parte Graves, supra at 113.  Appellant=s second point of error is overruled.

The
judgment of the trial court is affirmed.

 

AUSTIN
McCLOUD

SENIOR
JUSTICE

 

April 17, 2003

Publish.  See TEX.R.APP.P. 47.2(b).

Panel consists of: Arnot, C.J., and

Wright, J., and McCloud, S.J.[1]











[1]Austin McCloud, Retired Chief Justice, Court of
Appeals, 11th District of Texas at Eastland sitting by assignment.