Becker v. State



COURT OF APPEALS


EIGHTH DISTRICT OF TEXAS


EL PASO, TEXAS





ARTURO TARANGO,


 Appellant,


v.


THE STATE OF TEXAS,


 Appellee. 

§


 


§


 


§


 


§


 


§



§

No. 08-05-00231-CR



Appeal from


409th District Court


of El Paso County, Texas


(TC # 20040D00432)





O P I N I O N



 Arturo Tarango appeals his conviction of burglary of a habitation. A jury found Appellant
guilty and assessed punishment at imprisonment for a term of seventy-five years. We affirm.

FACTUAL SUMMARY


 On December 7, 2003, the complainant, Maria Ruiz, returned to her apartment at
approximately 9:00 in the evening. She had been gone most of the day visiting her mother. Ruiz
lived in the apartment with her son, who was about one year old at the time. Although she had
locked the door when she left, it was unlocked and pushed open when she placed her key in the door. 
Ruiz walked cautiously into the apartment and turned on the light in her bedroom. Having left the
room tidy, she noticed immediately that her bedroom was a mess. A piggy bank had been broken
open and the cash inside had been taken. Her jewelry box had been opened and earrings were strewn
all over her dresser. She found her necklaces on the floor by the bedroom window. Ruiz went into
the living room and saw that her VCR and some tapes were missing. A tote bag was missing but the
clothes that had been inside the bag were thrown on the floor. Ruiz then called the police.

 Officer Mark Fernandez was dispatched to the scene and fingerprinted various areas and
items in the apartment. He lifted only one print from the exterior kitchen window where it appeared
entry had been made. He also lifted a shoe print on the tile kitchen floor. Fernandez removed the
piggy bank and jewelry box for additional fingerprint processing. He found prints on both items and
turned them over to the fingerprint specialist for comparison. Bruce Orndorf is the El Paso Police
Department's senior fingerprint examiner. He compared the latent prints received from Fernandez
to the known prints of Appellant, who was a suspect in the case, (1) and determined that Appellant's
fingerprints matched one latent print found on the piggy bank and one latent print found on the
jewelry box. Ruiz did not know Appellant and did not give him consent to be in her apartment.

 Appellant testified at trial that he had been in the apartment on several occasions because he
was having an affair with Ruiz. A friend introduced the couple when she purchased cocaine from
Ruiz at the apartment. The relationship ended when Ruiz saw him with another woman. He had
hidden some cocaine in the piggy bank and removed it before leaving the apartment. When asked
on cross-examination to explain how his fingerprint was found on the jewelry box, Appellant
claimed that they knocked over some things while having sex and he might have picked it up and
put it back on the dresser. Appellant admitted that he never told the police about his relationship
with the complainant or that he had been in the apartment with her consent even though the officer
interrogating him confronted him with the evidence that his fingerprints had been found in the
apartment. Appellant also admitted that he had been convicted of attempted burglary of a habitation
in 1992; he had been arrested for burglary of a habitation in 2000, but it was reduced to theft; and
he was arrested for burglary of a habitation in 2003, but it was reduced to criminal trespass. During rebuttal, Ruiz testified that she had never seen Appellant before that day in court and
she expressly denied having an affair with him or using cocaine with him. Ruiz also denied being
a drug dealer. Ruiz's landlord, Gwen Hopkins, testified that she knew Ruiz personally and none of
her tenants ever complained that suspicious persons were seen going to Ruiz's apartment or that Ruiz
was dealing drugs out of the apartment. Hopkins never saw Appellant visiting Ruiz at the apartment. 
She recalled that she had allowed Appellant to live in the apartment for about two weeks when his
mother had "put him out" but this occurred before Ruiz lived there. Hopkins, who knew Appellant
well and was familiar with his reputation for truthfulness, testified she would not believe anything
he said. The jury rejected Appellant's defense and found him guilty of burglary of a habitation and
assessed his punishment at imprisonment for a term of seventy-five years.

VOIR DIRE COMMENT ON


FAILURE TO TESTIFY


 In his first point of error, Appellant contends that during voir dire the prosecutor
impermissibly commented on his failure to testify in violation of the Fifth Amendment. Appellant
complains about the highlighted portion:

 The Defense has no burden to prove him or herself innocent. Again, the idea,
the concept is based on fairness. If I were to say that Ms. Stevens keyed my car, and
I drag her in a courtroom, I'd better be able to prove it, okay, with substantial
evidence, and she doesn't have to get on the stand or do anything at her trial to prove
that she did not do it. It's an idea based on fairness.


 One of the principles behind that is called the 5th Amendment right. 
Basically that's a constitutional right that every single one of us is afforded that says
that we do not have to do that. We do not have to speak at our trial or provide any
evidence against ourselves. We can choose to remain silent. Every single one of us
has that constitutional right. All right?


 Let's talk about this concept for a second. Outside these courtroom doors in
the real world, it works differently, right? Especially when you as a juror -- you're
going to be asked to be the fact finder. Human nature says that we always want to
hear both sides of the story. We always do.


 If I were to go home one day and my -- I get home and my five-year-old and
my six-year-old are at home, let's say with a babysitter, and I get home and I say --
I see that a lamp has been broken on the floor of the living room. So I call the kids
in and I ask them, Who broke the lamp, what happened while I was gone?


 In the real world, my five-year-old is not going to be able to say, Mommy, I'm
going to choose to invoke my 5th Amendment right at this point. It doesn't work that
way out there, but you can bet it works that way here, because we're dealing with
very serious issues. We're dealing with somebody's liberty and we are veiled and
protected by constitutional rights.


 Every single one of us have these rights. So one of them is, you do not have
to testify if you're on trial. You can choose to remain silent and make the State prove
their case without your help. I cannot, as a prosecutor, call a criminal defendant to
the stand and ask him or her questions. 


Appellant's counsel then requested a bench conference and the following discussion occurred: 

 [Defense counsel]: We move for a mistrial. They keep referring to the
Defendant as a criminal. They keep referring to the right to -- the 5th Amendment
right as a cover screen. They are impugning a cover-up by the Defendant by the use
of the language. It's gone beyond the discussion of the 5th Amendment to a direct
attack on the Defendant using such words as 'criminal' and I move for a mistrial. 

 

. . .



 [Prosecutor]: Your Honor, I'm talking about any criminal defendant. I'm not
using any terms specifically to the Defendant. I'm solely talking to the 5th
Amendment right.


 [Defense counsel]: I'd like the record to reflect that when she said 'criminal,'
she turned around and slightly leaned to Defense counsel's table and moved her right
arm slightly to Defense counsel's table. I saw it personally.


 [The Court]: Your objection is overruled. 

 On appeal, Appellant argues that the prosecutor gave the jury panel the impression that even
a child does not have a right to claim this right and that the Constitution is valid only in a court of
law. The State responds that the argument made on appeal is waived because it does not comport
with the objection raised and ruled on at trial. We agree. To preserve error for review on appeal,
a defendant's complaint on appeal must comport with the objection raised at trial. Santellan v. State,
939 S.W.2d 155, 171 (Tex.Crim.App. 1997). Appellant did not raise any objection in the trial court
sufficient to preserve the issue raised on appeal. Consequently, it is waived. We overrule Point of
Error One.

SUFFICIENCY OF THE EVIDENCE


 In Point of Error Two, Appellant challenges the legal and factual sufficiency of the evidence
supporting his conviction. More specifically, he argues that the evidence is insufficient to prove
beyond a reasonable doubt that he is the person who committed the offense.

Legal Sufficiency


 In reviewing the legal sufficiency of the evidence to support a criminal conviction, we must
review all the evidence, both State and defense, in the light most favorable to the verdict to
determine whether any rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61
L.Ed.2d 560 (1979); Geesa v. State, 820 S.W.2d 154, 159 (Tex.Crim.App. 1991). We consider all
of the evidence, whether admissible or inadmissible. Wilson v. State, 7 S.W.3d 136, 141
(Tex.Crim.App. 1999); Johnson v. State, 967 S.W.2d 410, 412 (Tex.Crim.App. 1998). We do not
resolve any conflict of fact or assign credibility to the witnesses, as it was the function of the trier
of fact to do so. See Adelman v. State, 828 S.W.2d 418, 421 (Tex.Crim.App. 1992); Matson v. State,
819 S.W.2d 839, 843 (Tex.Crim.App. 1991). Instead, our duty is only to determine if both the
explicit and implicit findings of the trier of fact are rational by viewing all of the evidence admitted
at trial in a light most favorable to the verdict. Adelman, 828 S.W.2d at 422. In so doing, any
inconsistencies in the evidence are resolved in favor of the verdict. Matson, 819 S.W.2d at 843.
Further, the standard of review is the same for both direct evidence and circumstantial evidence
cases. Geesa, 820 S.W.2d at 158.

 The essential elements of burglary of a habitation are: (1) a person; (2) without effective
consent of the owner; (3) enters a habitation; (4) with intent to commit theft. Tex.Penal Code Ann.
§ 30.02(a)(Vernon 2003). Appellant argues generally that no witness or evidence placed him in the
apartment on the day of the burglary. Generally, fingerprint evidence alone will be sufficient to
sustain a conviction if the evidence shows that the prints were necessarily made at the time of the
burglary. Mathew v. State, 839 S.W.2d 110, 112-13 (Tex.App.--Corpus Christi 1992, no pet.), citing 
Bowen v. State, 460 S.W.2d 421, 423 (Tex.Crim.App. 1970) and Nieto v. State, 767 S.W.2d 905,
908 (Tex.App.--Corpus Christi 1989, no pet.). Here, the evidence showed that when Ruiz left the
apartment, it was tidy and her belongings were undisturbed. When she returned, she discovered that
someone had entered the apartment without her consent and had gone through her belongings,
including the piggy bank and her jewelry contained in the jewelry box. Appellant's fingerprints were
found on both the piggy bank and jewelry box. The person who entered the apartment broke into
the piggy bank and removed the cash and took other items from the apartment including a video
cassette recorder. He also took a ring from the jewelry box. Other evidence revealed that Appellant
was often seen in the area because he lived nearby. Although Appellant claimed he had a
relationship with Ruiz and had been in the apartment by invitation, Ruiz expressly denied knowing
Appellant or ever consenting for him to be in her apartment. The jury resolved this conflict in the
evidence in favor of the State and found Appellant guilty. When taken in the light most favorable
to the verdict, the foregoing evidence is legally sufficient to permit a rational trier of fact to find
beyond a reasonable doubt that Appellant entered Ruiz's apartment without her consent with the
intent to commit theft.

Factual Sufficiency


 In reviewing the factual sufficiency of the evidence to support a conviction, we are to view
all the evidence in a neutral light, favoring neither party. Johnson v. State, 23 S.W.3d 1, 7
(Tex.Crim.App. 2000); Clewis v. State, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996). In performing
our review, we are to give due deference to the fact finder's determinations. See id. at 8-9; Clewis,
922 S.W.2d at 136. The fact finder is the judge of the credibility of the witnesses and may "believe
all, some, or none of the testimony." Chambers v. State, 805 S.W.2d 459, 461 (Tex.Crim.App.
1991). Evidence is factually insufficient if it is so weak that it would be clearly wrong and
manifestly unjust to allow the verdict to stand, or the finding of guilt is against the great weight and
preponderance of the available evidence. Johnson, 23 S.W.3d at 11. Therefore, the question we
must consider in conducting a factual sufficiency review is whether a neutral review of all the
evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak
as to undermine confidence in the fact finder's determination, or the proof of guilt, although
adequate if taken alone, is greatly outweighed by contrary proof. See id. Under the first prong of
Johnson, we cannot conclude that a conviction is "clearly wrong" or "manifestly unjust" simply
because, on the quantum of evidence admitted, we would have voted to acquit had we been on the
jury. Watson v. State, 204 S.W.3d 404, 417 (Tex.Crim.App. 2006). Under the second prong of
Johnson, we cannot declare that a conflict in the evidence justifies a new trial simply because we
disagree with the jury's resolution of that conflict. Id. Before finding that evidence is factually
insufficient to support a verdict under the second prong of Johnson, we must be able to say, with
some objective basis in the record, that the great weight and preponderance of the evidence
contradicts the jury's verdict. Id. 

 Appellant argues that the State failed to overcome his testimony that he had been invited to
the apartment by Ruiz for social purposes. The State is not required to "overcome" or rebut
Appellant's testimony. The jury had before it competing evidence and it was required to weigh that
evidence and judge the credibility of the witnesses. It was the jury's task to determine whether it
believed the State's witnesses or Appellant. The evidence is not factually insufficient simply
because the jury resolved the conflicting views of the evidence in favor of the State. Cain v. State,
958 S.W.2d 404, 410 (Tex.Crim.App. 1997). Having given appropriate deference to the jury's
assessment of the evidence and its resolution of the evidentiary conflicts, and after considering all
of the evidence in a neutral light, we conclude the evidence is factually sufficient to support
Appellant's conviction. We overrule Point of Error Two.

INEFFECTIVE ASSISTANCE


 In Point of Error Three, Appellant asserts that he was denied the effective assistance of
counsel at trial because he did not ask proper questions of individual venirepersons during voir dire;
he did not object to photos of the crime scene; he did not object when the State called a witness who
was not on the witness list; he did not prepare Appellant to testify; he failed to investigate the crime
scene; he did not request an instruction on the lesser-included offense of theft; he waived an opening
statement during the punishment phase; he did not present any punishment or mitigation evidence;
and counsel's punishment argument was too brief. The State initially responds that Appellant's
ineffective assistance of counsel claim is inadequately briefed because the argument consists
primarily of a laundry list of claimed deficiencies. The State is correct that Appellant has failed to
provide adequate argument or citation to authority for several of his complaints about trial counsel,
and we have, where appropriate refused to address the arguments. Rather than refusing to review
the entire point of error, however, we will review as much of it as is permitted by the state of the
record and the briefing.

Standard of Review


 The proper standard for determining claims of ineffective assistance under the Sixth
Amendment is the two-step analysis adopted by the United States Supreme Court in Strickland v.
Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See Hernandez v. State, 988
S.W.2d 770, 771-72 (Tex.Crim.App. 1999). Under the first prong, the defendant must show that
counsel's performance was deficient, to the extent that counsel failed to function as the "counsel"
guaranteed by the Sixth Amendment. Jackson v. State, 877 S.W.2d 768, 771 (Tex.Crim.App. 1994).
Under the second prong, the defendant must establish that counsel's deficient performance
prejudiced the defense. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693; Jackson,
877 S.W.2d at 771. Prejudice is established by a showing that there is a reasonable probability that
but for counsel's unprofessional errors, the result of the proceeding would have been different.
Strickland, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698; Jackson, 877 S.W.2d at 771.
Failure to make the required showing of deficient performance defeats the ineffectiveness claim.
Jackson, 877 S.W.2d at 771.

 When we review a claim of ineffective assistance, we must indulge a strong presumption that
counsel's conduct falls within the wide range of reasonable, professional assistance, and the
appellant must overcome the presumption that the challenged conduct can be considered sound trial
strategy. Jackson, 877 S.W .2d at 771. Allegations of ineffectiveness of counsel must be firmly
founded in the record. Mallett v. State, 65 S.W.3d 59, 63 (Tex.Crim.App. 2001). The record on
direct appeal will generally be insufficient to show that counsel's representation was so deficient as
to meet the first prong of the Strickland standard because the reasonableness of counsel's choices
often involve facts that do not appear in the appellate record. Rylander v. State, 101 S.W.3d 107,
110 (Tex.Crim.App. 2003); Mallett, 65 S.W.3d at 63. An appellant challenging trial counsel's
performance therefore faces a difficult burden and a substantial risk of failure. Thompson v. State,
9 S.W.3d 808, 813 (Tex.Crim.App. 1999). 

Voir Dire


 Appellant argues that counsel failed to engage in individual voir dire of potential jurors. He
does not identify the jurors but simply cites to one page in the record where counsel said he did not
need to individually question a woman who was married to a U.S. Customs agent. Appellant later
utilized a peremptory strike against this potential juror. Appellant makes only conclusory assertions
in his brief and does not establish why trial counsel's decision to not question this potential juror
could not be considered reasonable trial strategy, how it constituted deficient performance or how
it prejudiced him. Appellant's argument is inadequately briefed and we decline to make his
argument for him. See Tex.R.App.P. 38.1(h). Furthermore, Appellant did not file a motion for new
trial. In the absence of a record indicating trial counsel's strategy, we are left to speculate about the
reasons for counsel's actions. Under these circumstances, we conclude that Appellant has failed to
rebut the presumption that his attorney's conduct falls within the wide range of reasonable,
professional assistance and can be considered sound trial strategy.

Crime Scene Photos


 Appellant next complains that counsel failed to object to photographs of the crime scene. 
He argues in conclusory fashion that the State failed to lay a proper foundation for their introduction,
failed to establish a chain of custody, and failed to authenticate them. He does not provide any
additional argument or cite any authority indicating that these objections, if made by counsel, should
have been sustained by the trial court. In order to show ineffectiveness in failing to object, Appellant
must demonstrate that if counsel had objected on the indicated grounds, the trial court would have
erred in overruling the objection. See Vaughn v. State, 931 S.W.2d 564, 566 (Tex.Crim.App. 1996). 
A photograph may be authenticated by the testimony of any witness who has personal knowledge
that the particular item accurately represents the scene or event it purports to portray. Tex.R.Evid.
901(a). Ruiz testified that the each of the three photographs in question accurately represented the
scene it was intended to portray. Thus, Appellant's complaint that the photographs were not
authenticated is entirely without merit. Because Appellant has not established that the judge would
have erred by overruling the other objections he claims should have been made, he has not shown
ineffective assistance of counsel. 

Witness List


 Appellant also contends that trial counsel erred by failing to object when the State called
Gwen Hopkins to testify because she was not included on the witness list. Contrary to Appellant's
assertions, Gwen Hopkins was included on the State's witness list filed on June 18, 2004. Appellant
generally suggests that Hopkins' testimony was objectionable but he does not identify what portions
of her testimony should have been objected to or the grounds of the objection. This portion of
Appellant's argument is inadequately briefed and presents nothing for our review. See Tex.R.App.P.
38.1(h).

Appellant's Testimony


 Appellant also accuses his attorney of failing to prepare him to testify. As evidence of this
lack of preparation, he points to his testimony that he had not gone over his drawing of Ruiz's
apartment with any of his attorneys and that he committed an extraneous offense, possession of
cocaine. The record reflects that counsel discussed with Appellant prior to trial his decision to testify
and the consequences of waiving his right to remain silent. (2) There is no affirmative evidence in the
record that counsel did not prepare Appellant to testify and we are unable to conclude from the
substance of Appellant's testimony that trial counsel failed to do so. We will not assume from a
silent record that trial counsel did not discuss Appellant's testimony with him, including the
testimony about the extraneous offense. See Hubbard v. State, 770 S.W.2d 31, 43 (Tex.App.--Dallas
1989, pet. ref'd)(where record was silent as to whether defendant's attorney explicitly told him that
denying the delivery offenses would preclude him from raising an entrapment defense as to those
offenses, court refused to assume that counsel did not discuss this aspect of defendant's testimony
with him). Appellant has failed to rebut the presumption that his attorney's conduct falls within the
wide range of reasonable, professional assistance.

Failure to Investigate


 Appellant alleges that trial counsel failed to investigate the case. To support a claim of
ineffective assistance for failure to investigate, an appellant must show that he had a viable defense
that his attorney failed to discover. Butler v. State, 716 S.W.2d 48, 55 (Tex.Crim.App. 1986); King
v. State, 649 S.W.2d 42, 43 (Tex.Crim.App. 1983). Because Appellant did not file a motion for new
trial on this issue, there is no evidence in the appellate record regarding the steps counsel took to
investigate. Further, Appellant does not indicate what viable defense trial counsel failed to discover. 
Appellant has failed to establish ineffective assistance of counsel.

Lesser-Included Offense


 Appellant next argues that counsel failed to request an instruction on the lesser-included
offense of theft. His argument in this regard does not include any citations to authority or
discussions of relevant case law and how it applies to this case. A defense attorney's failure to
request a jury instruction can render his assistance ineffective only if the trial judge would have erred
in refusing the instruction had counsel requested it. See Wood v. State, 4 S.W.3d 85, 87 (Tex.App.--Fort Worth 1999, pet. ref'd). It may be reasonable trial strategy not to request a charge on a
lesser-included offense. See Lynn v. State, 860 S.W.2d 599, 603 (Tex.App.--Corpus Christi 1993,
pet. ref'd). Appellant does not point to any evidence in the record establishing that if he is guilty,
he is guilty only of the lesser offense. See Arevalo v. State, 943 S.W.2d 887, 889 (Tex.Crim.App.
1997). Appellant denied entering the apartment without Ruiz's consent and denied taking any of her
property. He testified that fingerprints were on the piggy bank and the jewelry box because he had
been in the apartment by invitation. Because there was no evidence showing that if Appellant was
guilty, he was guilty only of theft, he was not entitled to an instruction on the lesser-included offense. 
See McKinney v. State, 627 S.W.2d 731, 732 (Tex.Crim.App. 1982)(where defendant denied
committing the offense, there was no evidence that he was guilty only of lesser-offense). Counsel
did not render ineffective assistance by failing to request an instruction to which Appellant was not
entitled. See Wood, 4 S.W.3d at 87.

Punishment Phase


 Appellant offers three allegations related to counsel's conduct at the punishment phase: 
counsel did not make an opening statement; he did not present any punishment or mitigation
evidence; and his final argument was too brief. There is no evidence in the record that any
admissible punishment evidence existed. Further, as we have noted in discussing the other
allegations of deficient performance, the record is silent regarding counsel's trial strategy. Under
these circumstances, Appellant has not rebutted the presumption that counsel's performance at the
punishment phase falls within the range of reasonable, professional assistance or that the challenged
conduct is sound trial strategy. See Bone v. State, 77 S.W.3d 828, 834-35 (Tex.Crim.App. 2002);
Thompson, 9 S.W.3d at 813-14. Because Appellant has failed to carry his burden under Strickland,
we overrule Point of Error Three. The judgment of the trial court is affirmed.


March 22, 2007 

 ANN CRAWFORD McCLURE, Justice


Before Chew, C.J., McClure, and Carr, JJ.


(Do Not Publish)
1. The apartment complex owner, Gwen Hopkins, knew Appellant and told the police that she had seen
Appellant at the apartment complex. 
2. Prior to Appellant's testimony, counsel put Appellant on the stand and questioned him regarding his decision
to testify. Appellant indicated that he knew he had a right to remain silent but wished to waive it and testify even though
counsel had advised him of the consequences of doing so.